**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SCOTTSDALE CAPITAL ADVISORS CORPORATION<br><br>                Plaintiff,<br><br>    v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY<br><br>                Defendant. | C.A. No. 1:18-cv-2973 (CRC) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant Financial Industry Regulatory Authority ("FINRA") has moved pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff Scottsdale Capital Advisors Corporation's ("SCA") Complaint alleging breach of contract by FINRA and seeking a declaration that FINRA has breached its obligations to SCA as set forth in FINRA's by-laws and its membership agreement with SCA. Defendant's motion is wide of the mark and fails to address the substance of Plaintiffs' claim. The motion should be denied.

**INTRODUCTION**

Defendant dedicates the entirety of its 17-page motion to dismiss to the idea that Plaintiff's claim cannot proceed because, according to Defendant, Plaintiff is seeking review of regulatory action and so its sole remedy lies in the labyrinth of administrative proceedings. Like ships passing in the night, FINRA fails to acknowledge the key allegations in the Complaint, instead inundating the court with a lengthy iteration of matters not relevant to SCA's claim, reaching a crescendo whereby FINRA asserts that this Court is without subject matter jurisdiction because FINRA is subject to oversight by the Securities and Exchange Commission

("SEC") and that SCA's claim is meaningless because FINRA enjoys absolute immunity from civil liability.

FINRA assiduously ignores the true basis of SCA's claim.  In all of its briefing, FINRA manages not even to acknowledge that SCA has sued for breach of contract based on an agreement that FINRA voluntarily entered into, and benefits from, with SCA. FINRA's entire discussion of this court's subject matter jurisdiction would be germane only if SCA was seeking review of FINRA's regulatory actions, but SCA seeks no such review.  It is a party to an agreement with FINRA, and it maintains that FINRA has obligations under the agreement that it has violated.  FINRA's argument that it enjoys absolute immunity from civil liability is  without merit in view of SCA's claim.

The crux of Defendant's position is not quite the bold assertion that it may *never* be sued for breach of contract, but an equally unseemly corollary:  FINRA asserts that its contract with a FINRA member, such as SCA, is entirely unilateral, its obligations therein can never be enforced and are completely illusory but that *FINRA can sue* – and has sued – its members for purported breaches of that same agreement.  FINRA simply claims that it may repudiate its own agreements with impunity, while enforcing those same agreements with unquestionable certitude.  This Court should roundly reject such a lopsided and unsupported proposition.

I.         BACKGROUND

FINRA is a private, not-for-profit Delaware corporation, (Compl. ¶ 8) formed in July 2007 when the National Association of Securities Dealers ("NASD") consolidated its operations and merged with the regulatory function of the New York Stock Exchange. (*Id.*)  FINRA is an SRO registered with the SEC pursuant to the Maloney Act of 1938, 15 U.S.C. § 78o-3, which amended the Exchange Act. (*Id.*)  As an SRO, FINRA has a number of obligations under the

Exchange Act and the rules and regulations promulgated thereunder by the SEC.  FINRA also enters into commercial agreements with a range of counterparties including member firms.

SCA is a retail brokerage firm that trades securities, and has been registered with the SEC as a broker-dealer since 2002.  (Compl ¶ 7)  SCA became a member of the NASD in 2002 and, since then, has maintained its membership agreement with  FINRA.  (*Id.*)  As FINRA itself describes it, the membership arrangement is a "contractual relationship between the Applicant and FINRA."  (Compl. ¶ 28)  As part of that "contractual relationship," SCA agreed to adhere to the FINRA by-laws, and section F(1) of the membership agreement expressly incorporates those by-laws into the parties' contractual relationship.  (Compl. ¶ 29)  It is well-settled that, even if the membership agreement did not incorporate the by-laws (which it did), a corporation's by-laws constitute a binding contract between the corporation and its shareholders or members.  *See Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934, 939 (Del. Ch. 2013) (citing *Airgas, Inc. v. Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del. 2010)).

Those by-laws that are incorporated into its contract with members impose a number of conditions and obligations on FINRA itself.  (Compl. ¶¶ 30-32)  FINRA has given three key covenants, as relevant here, and obligated itself to its members that: (1) it would adopt and give effect only to rules consistent with "applicable law" and which "carry out the purposes of . . . the Act" (FINRA By-Laws, Arts. VII, Sec. 1(a)(ii)-(iii) and XI, Sec. 1; *see also id.* Art. I(a) (defining "Act" as "the Securities Exchange Act of 1934, as amended")); (2) it would give effect to rules only after they have been approved by the SEC (FINRA By-Laws, Art. XI, Sec. 1); and (3) it would it would "assure fair representation of its members in the . . . administration of its affairs." (15 U.S.C. § 78o-3(b)(4)).  SCA's claim is based solely on FINRA's failure to adhere to these covenants, which it voluntarily undertook.

Under the first covenant, FINRA incorporated the strictures of the Exchange Act as a restriction on its authority, such that it may not act inconsistent with the provisions of the Exchange Act. Notably, the Exchange Act states that an SRO must not seek "to regulate by virtue of any authority conferred by this chapter matters not related to the purposes of this chapter." 15 U.S.C. § 78o-3(b)(6). Said another way, FINRA may not take action as to matters not covered by the Exchange Act, and FINRA's by-laws represent its covenant to its member SCA that it would not do so. In similar fashion, and also relevant to the second covenant described above, the Exchange Act requires all rules and rule interpretations to be submitted to the SEC for approval (15 U.S.C. § 78s(b); 17 C.F.R. § 240.19b-4(c)), and again, FINRA agreed with SCA that it would do this. As alleged in the Complaint, FINRA has done the exact opposite: it has adopted and interpreted rules pertaining to areas not covered by the Exchange Act, and has not sought or obtained SEC approval of those interpretations. (Compl. ¶¶ 48-50, 52-61).

As to its third covenant, FINRA agreed that it would assure fair representation of its members. As alleged in the Complaint, however, FINRA does not do this; since SCA became a member, it has actually altered its membership to diminish the representation of firms like SCA. At this point, FINRA allows its members to elect a mere 7 of the 23 members of its Board of Governors. (Compl. ¶ 34) The overwhelming majority of the Board of Governors are selected by the FINRA nominating committee. (*Id.*) It then uses that structure to pursue policies that target a particular segment of the market, namely those members engaged in the micro-cap and low-priced securities sectors, like SCA. (Compl. ¶¶ 33-34, 39-42) SCA submits that this practice by FINRA, advanced by SCA's ability to vote for only a scant minority of FINRA's Board of Governors that direct that practice, does not constitute fair representation and that, by

following such practices, FINRA has not adhered to the obligations set forth in its by-laws, which necessarily incorporates the obligation of fair representation contained in the Exchange Act.

In short, FINRA has, through its by-laws, undertaken a series of obligations to SCA. At the same time, FINRA has taken actions in derogation of those very obligations. FINRA may contend, in relation to its breach of its agreements, that it has engaged in conduct inconsistent with its agreements because regulators required it to do so, but that would be asserted as a defense to the claim; it does not *bar* the claim. Thus, this case has little to do with FINRA's exercise of regulatory authority, and everything to do with FINRA's failure to keep promises it has made.

## II. ARGUMENT

### A. Legal Standard

Defendant acknowledges the appropriate standards under Federal Rules of Procedure 12(b)(1) and 12(b)(6): Plaintiff's allegations must be construed as true under both Rule 12(b)(1) and 12(b)(6), *see Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("in deciding whether to grant a motion to dismiss for lack of jurisdiction . . . the court must still accept all of the factual allegations in [the] complaint as true") (internal citations and quotations omitted; alteration in original), and a complaint should be dismissed only if the allegations provide no basis for any relief. *See Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

### B. This Court Has Subject Matter Jurisdiction Over This Diversity Action

#### 1. There is diversity jurisdiction under 28 U.S.C. § 1332.

FINRA does not dispute the well-pleaded allegations in the Complaint that establish diversity of citizenship under 28 U.S.C. § 1332. FINRA is a Delaware corporation with its

principal place of business in Washington, D.C.  (Compl. ¶ 13; FINRA Motion to Dismiss, Doc. No. 13 at 3 (hereafter "FINRA MTD").  SCA is an Arizona corporation with its headquarters and principal place of business located in Arizona.  (Compl. ¶ 12).  Thus, there is complete diversity and jurisdiction exists.  28 U.S.C. § 1332.

### 2.     The Exchange Act does not divest this Court of jurisdiction to hear claims asserting breach of contract.

FINRA argues that this Court lacks jurisdiction in this case because FINRA is the defendant, sweeping broadly in its argument that the Exchange Act's "exclusive review process requires all challenges to FINRA's rulemaking and regulatory activities to be made first to FINRA, then to the SEC, and from the SEC to the appropriate United States Court of Appeals, not a federal district court."  (FINRA MTD at 9)  FINRA's argument is premised on its persistent and deliberate mischaracterization of the claim asserted by SCA, which seeks to hold FINRA to the obligations it voluntarily undertook, and not to review or challenge any rulemaking or regulatory action.

FINRA relies on the Supreme Court's decision in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) which held that the administrative and judicial review scheme in the Federal Mine Safety and Health Act divested federal district courts from hearing claims challenging the promulgation of a rule or action of a federal agency.  FINRA cites a litany of cases that have applied this same principle to SROs and the Exchange Act's administrative and judicial review scheme.  (FINRA MTD at 10).  Strikingly absent from all of those cases, however, is consideration of a claim that the SRO had entered into and then breached an agreement with a counterparty.  *See, e.g.*, *Scottsdale Capital Advs. Corp. v. Fin. Indus. Regulatory Auth.*, 844 F.3d 414, 418-19 (4th Cir. 2016) (claim seeking to enjoin FINRA disciplinary proceeding); *Hayden v. New York Stock Exch., Inc.*, 4 F. Supp. 2d 335 (S.D.N.Y. 1998) (same); *Charles Schwab & Co.,*

*Inc. v. FINRA, Inc.*, 861 F. Supp. 2d 1063 (N.D. Cal. 2012) (claim that FINRA rule violated the Federal Arbitration Act); *Pyramid Fin. Corp. v. FINRA, Inc.*, 2010 U.S. Dist. Lexis 90543, *3-4 (N.D. Cal. Aug. 27, 2010) (claim seeking to enjoin enforcement of FINRA's net capital rule).[1] This distinction substantially undermines FINRA's argument.

As the Supreme Court has recognized since its decision in *Thunder Basin*, the Exchange Act's administrative review scheme is not as exclusive as FINRA asserts. *See Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 3150-51 (2010). Rather, claims may be pursued in the district court if they are "outside the Commission's competence and expertise," and not "of the type Congress intended to be reviewed within th[e] statutory structure." *Id.* at 3150 (alteration in original). A breach of contract claim as SCA asserts is not of that type either. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83-4 (1982) (rejecting argument that district courts lack jurisdiction to address questions of contract interpretation where the contract arises in a context otherwise committed to an agency's jurisdiction); *cf. City of Providence v. Bats Global Mkts., Inc.*, 878 F.3d 36, 44-45 (2d Cir. 2017) (affirming subject matter jurisdiction over claims that Exchange's actions were fraudulent even though those actions were subject to the SEC's approval and arguably within Exchange Act's administrative and judicial review scheme). In fact, neither the Exchange Act, nor the SEC's or FINRA's rules provide any mechanism to adjudicate a dispute concerning FINRA's contract with and its obligations to its members. *See* 15 U.S.C. §§ 78s(d)-(e) (providing for review of *disciplinary actions* taken by an SRO); 15 U.S.C. § 78o-3(h)(3) (providing for review within an SRO and

---

[1] In *Pyramid*, the plaintiff sought a TRO against enforcement of a FINRA rule, and suggested that if the rule were enforced, it would constitute a breach of contract since that would prevent the plaintiff from taking advantage of another FINRA rule. *See Pyramid*, 2010 U.S. Dist. Lexis 90543 at *4. The Court did not address that assertion, and instead concluded that it lacked jurisdiction to issue a TRO because the question of whether the Net Capital Rule conflicted with other FINRA rules was within the administrative scheme. *Id.* at *6-8. Here, by contrast, SCA does not argue that application of one rule violates another, but rather that FINRA's actions violate its contractual commitments to its members. Such is not a claim "squarely within the [SEC]'s competence and expertise," such that jurisdiction is divested by the Exchange Act. *See id.* at *7-8.

before the SEC for *disciplinary actions* against members and denials of membership). Thus, FINRA's position amounts to a declaration that its contractual obligations to members are *unreviewable. See Thunder Basin*, 510 U.S. at 212-13 (noting that administrative review processes do not preclude district court jurisdiction "where a finding of preclusion could foreclose all meaningful judicial review").

SCA does not seek to have any FINRA rule overturned, deemed invalid, or otherwise reviewed for compliance with the Exchange Act. Nor does SCA seek to have this Court enjoin or review a FINRA disciplinary proceeding. Such would of course be more within the SEC's "competence and expertise" such that the Exchange Act's review scheme would be applicable. Instead, SCA simply asks this court to determine whether FINRA breached a promise FINRA made specifically to SCA in the membership agreement. This liability is created not by the Exchange Act (or any SEC rule or even FINRA rule), but by FINRA's own agreement with its member, SCA. *Cf. Gary Jet Ctr. v. Gary/Chicago Int'l Airport Auth.*, No. 2:13-cv-453, 2014 U.S. Dist. Lexis 45201, \*13-14 (N.D. Ind. Apr. 2, 2014) (district court did not lack subject matter jurisdiction over claim for breach of contract where contract expressly incorporated compliance with FAA regulations even though statutory scheme provided administrative and judicial review process within the FAA and Courts of Appeals). FINRA's position that it cannot be sued in federal court is inappropriate and unsupported and should be rejected.

**C.      SCA Has Stated A Viable Claim for Relief**

FINRA asserts that SCA's claim should be dismissed pursuant to Rule 12(b)(6) because there is no private right of action against FINRA and because FINRA is absolutely immune from civil liability. Both positions are inaccurate in view of SCA's claim for breach of contract.

### 1. SCA has alleged a claim for breach of contract.

For a breach of contract claim to survive a motion to dismiss, a plaintiff need only allege the existence of a contract, a breach of that contract, and damages.  *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  SCA has established these elements by alleging that the FINRA membership agreement and the incorporated FINRA by-laws constitute an enforceable contract between SCA and FINRA, that FINRA breached that contract by taking actions that are contrary to those commitments and obligations, and that SCA was damaged as a result of this.  (Compl. ¶¶ 30-34, 39-42, 48-50, 52-61).

FINRA does not dispute that the elements of a claim for breach of contract have been alleged.

### 2. SCA does not seek to create a private right of action under the Exchange Act or SEC regulations.

FINRA asserts that there is no private right of action against an SRO for acts or omissions in connection with its duties as a securities regulator.  (FINRA MTD at 13).  But that contention is not a response to SCA's Complaint, it is an attempt to change the subject from the fact there is plainly a right of action against a counterparty based on a contract.  FINRA assumes both that SCA's claim is premised on FINRA's regulatory acts or omissions and that SCA asserts a violation of the Exchange Act or a rule or regulation thereunder.  Neither is an accurate characterization of SCA's claim.

Unlike the litany of cases recited by FINRA, SCA is not claiming that FINRA violated the Exchange Act, or a rule or regulation of the SEC, or even a FINRA rule.  Instead, SCA claims that FINRA violated its agreements to follow a particular course of action – adopt and give effect to rules only where consistent with the Exchange Act and, critically, only after submitting them to the SEC – and then did not do so.  It is not the statute or the rules that create

SCA's cause of action, but FINRA's contractual obligation to SCA as contained in FINRA's by-laws. *See Gary Jet*, 2014 U.S. Dist. Lexis 45201 at *13-14. The Court need not look at the content of any rule or regulation, but instead need only consider what FINRA promised to do (e.g., adopt rules and rule interpretations only if they have been approved by the SEC) and what FINRA actually did as alleged in the Complaint (e.g., adopt a rule interpretation without obtaining SEC approval and employ guidance in a manner inconsistent with its legal and contractual obligations). The same is true of SCA's allegation that FINRA promised to provide fair representation to its members but then adopted policies that discriminate against the particular segment of the market (micro-cap and low-priced securities) in which SCA does business. (Compl. ¶¶ 33-34, 39-42).

FINRA cites to *MM&S Financial, Inc. v. NASD*, 364 F.3d 908 (8th Cir. 2004) and other cases that held that there is no private right of action where an SRO fails to follow its own rules. But these cases are analytically distinct. In each, the plaintiffs challenged core regulatory actions by the SRO, such as adoption of a rule, decisions on membership, or a disciplinary finding. *See MM&S*, 364 F.3d at 908 (challenging NASD's authority to arbitrate claims by third-parties against plaintiff); *Desiderio v. Nat'l Ass'n of Secs. Dealers, Inc.*, 191 F.3d 198, 208 (2d Cir. 1999) (denial of membership in NASD); .*Feins v. AMEX*, 81 F.3d 1215 (2d Cir. 1996) (same); *Pinnacle Sec. Inv. Assocs., L.P. v. AMEX*, 946 F. Supp. 290 (S.D.N.Y. 1996) (same); *In re Olick*, No. 99-cv-5128, 2000 U.S. Dist. Lexis 4275, *9-11 (E.D. Pa. Apr. 4, 2000) (alleging NASD's failure to investigate inaccurate information in mandatory filings); *Meyers v. NASD*, No. 95-cv-75077, 1996 U.S. Dis. Lexis 6044, *11-14 (E.D. Mich. Mar. 29, 1996) (same).[2] These decisions rested on the courts' conclusions that the claims involved were based on violations of certain

---

[2] Many of these cases also involve challenges to actions that would be covered by the administrative review process established in the Exchange Act. *See, e.g.*, *Desiderio*, 191 F.3d at 208. As described in Section B.2, *supra*, the Exchange Act provides *no* mechanism to adjudicate FINRA's compliance with contractual obligations to members.

10

provisions of the Exchange Act itself, and none considered the issue of whether a breach of contract claim may be asserted where an SRO undertakes a specific contractual obligation separate and apart from any provision of the Exchange Act.  It is *that issue* that is presented here by SCA's specific allegations:  whether a member of a corporation may sue for breach of contract when corporate by-laws are not followed or whether, as FINRA asserts, it has no actual enforceable obligations to its members.  *See Boilermakers Local*, 73 A.3d at 939.  Clearly it may.  *Id.*

### 3. FINRA's claim of absolute immunity is inapplicable to the facts alleged in SCA's Complaint.

SCA does not dispute that, as a general rule, an SRO may be immune from civil liability "for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC." *Lowe v. Nat't Ass'n of Secs. Dealers, Inc. (In re Series 7 Broker Qualification Exam Scoring Litig.)*, 548 F.3d 110, 114 (D.C. Cir. 2008).  However, courts have recognized that immunity requires a "balance between the evils" because it may leave wrongs to go without redress.  *Austin Mun. Sec. v. NASD*, 757 F.2d 676, 687 (5th Cir. 1985) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (Learned Hand, J.), *cert. denied*, 339 U.S. 949 (1950)).  Courts should, therefore, "limit[] this extraordinary foreclosure of remedies." *Id.*; *see also In re NYSE Specialists*, 503 F.3d 89, 96 (2d Cir. 2007).

SRO immunity is limited in key respects which are implicated in SCA's claims and which FINRA persistently ignores.  First, immunity applies, as every case considering it has observed, only where the SRO "acts under the aegis of the Exchange Act's delegated authority." *See id.*; *see also City of Providence v. Bats Global Mkts., Inc.*, 878 F.3d 36, 46 (2d Cir.2017); *North v. Smarsh, Inc.*, 160 F. Supp. 3d 63, 86-87 (D.D.C. 2015).  Second, the SRO must be acting in a regulatory capacity.  *See id.*  Thus, where FINRA is not acting under authority

delegated by the Exchange Act or where it is not acting in a regulatory capacity, immunity is inapplicable. *See Weissman v. NASD, Inc.*, 500 F.3d 1293, 1297 (11th Cir. 2007) (*en banc*) ("immunity is not appropriate unless the relevant conduct constitutes a delegated quasi-governmental prosecutorial, regulatory, or disciplinary function") (internal citations omitted); *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1214 (9th Cir. 1998) ("self-regulatory organizations do not enjoy complete immunity from suits" but only if acting "under the aegis of the Exchange Act's delegated authority").

Here, as SCA has alleged, FINRA entered into a contractual agreement with SCA. The act of entering into a contractual arrangement is one that private parties engage in all the time, and it bears little resemblance to any of the authority delegated to FINRA under the Exchange Act. Nor is entering into a contract a "quasi-governmental prosecutorial, regulatory, or disciplinary function." *Weissman*, 500 F.3d at 1297 (advertising certain securities and the Exchange's platform were not regulatory functions); *cf. City of Providence*, 878 F.3d at 47 (identifying six contexts where actions were within the authority delegated under the Exchange Act; none involved entering into contractual relationship).

SROs may, contrary to FINRA's assertions, be held liable for acts that are not delegated under the Exchange Act and are not regulatory, but are instead "private business activit[ies]." *Weissman*, 500 F.3d at 1299. In *Weissman*, the Eleventh Circuit flatly rejected an argument analogous to the one proffered by FINRA here. Namely, the Court found that the mere fact that an SRO is by its nature "regulatory" and "serves important regulatory functions" does not mean that all activity it engages is in is "consistent with its powers and functions under the Exchange Act." *Id.* at 1297. As the Court recognized, this would mean that whatever action is taken by an SRO would be shielded. *See id.* FINRA's suggestion here is largely the same: any agreement it

has with its members is intertwined with its regulatory function, and whether it adheres to that agreement or not, it is immune from suit. The Eleventh Circuit's rejection of the NASD's argument also highlights that a court must ascertain whether an SRO's particular action is "consistent with [the SRO's] powers and functions under the Exchange Act." *Id.* As SCA has alleged, FINRA did not act consistently and by doing so, breached its obligation under its by-laws.

Authorities confirm that the fact that the contract claim may implicate issues of regulatory actions does not render the claim invalid. *See Gary Jet*, 2014 U.S. Dist. Lexis 45201 at *13-14. There may be instances in which an entity like FINRA has entered into an agreement that, at the time or later, conflicts with a regulatory circumstance, and a defendant entity may be able to argue that its breach is somehow excused by virtue of its regulatory obligations. But the court must still consider and interpret the agreement that the entity entered into, decide whether the breach occurred, and determine what if any remedy exists. That circumstance does not preclude any counterparty from asserting the claim that the breach occurred; if it did, there would be no means by which this particular issue – FINRA'S obligations to its counterparties under the terms of its own agreements – could be considered and resolved.

Therefore, FINRA ought not to enjoy immunity for its failure to adhere to its obligations as undertaken in its by-laws and its agreement with SCA.

## **CONCLUSION**

For the foregoing reasons, FINRA's motion to dismiss should be denied in its entirety.


DATED:  February 25, 2019                                   THOMPSON HINE LLP

                                                         By:   /s/ Joseph A. Smith
                                                         Joseph A. Smith
                                                         D.C. Bar No. 1010223
                                                         1919 M Street, N.W., Suite 700
                                                         Washington, D.C. 20036
                                                         Phone: (202) 331-8800
                                                         Fax: (202) 331-8330
                                                         joe.smith@thompsonhine.com

                                                         Maranda Fritz
                                                         *Admitted Pro Hac Vice*
                                                         335 Madison Avenue, 12th Floor
                                                         New York, NY 10017
                                                         Phone: (212) 344-5680
                                                         Fax: (212) 344-6101
                                                         maranda.fritz@thompsonhine.com

                                                         *Counsel for Plaintiff*
                                                         *Scottsdale Capital Advisors Corporation*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of February, 2019, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk and served on the following via the Court's ECM/ECF system:

> Timothy W. Mountz
> Terri L. Reicher
> FINRA Office of General Counsel
> 1735 K Street, N.W.
> Washington, DC  20006
> *Counsel for Defendant Financial Industry*
> *Regulatory Authority, Inc.*

                                          /s/ Joseph A. Smith
                                          Joseph A. Smith