**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SCOTTSDALE CAPITAL ADVISORS CORPORATION,<br><br>      Plaintiff,<br><br>      v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY,<br><br>      Defendant. | Civil Action No. 1:18-cv-2973 (CRC) |

**REPLY BRIEF OF DEFENDANT
FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.
<u>IN SUPPORT OF MOTION TO DISMISS COMPLAINT</u>**

<div style="margin-left:50%">

Timothy W. Mountz (D.C. Bar No. 1028867)
Terri L. Reicher (D.C. Bar No. 414685)
FINRA Office of General Counsel
1735 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 728-8210
Phone: (202) 728-8967
Fax: (202) 728-8294
Email: Timothy.Mountz@finra.org
Email: Terri.Reicher@finra.org

*Attorneys for Defendant*,
**FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.**

</div>

Defendant Financial Industry Regulatory Authority, Inc. (FINRA) submits this Reply Brief in Support of its Motion to Dismiss the Complaint.

**I.     INTRODUCTION**

Scottsdale argues that this case presents a simple breach of contract claim, and that federal jurisdiction exists because the corporate parties are diverse with a damages claim of more than $75,000. But the FINRA governance provisions that Scottsdale relies upon in support of its contract claim exist only because of FINRA's delegated regulatory authority under the federal securities laws.  FINRA is a registered national securities association and is legally required to act as Scottsdale's regulator under section 15A of the Securities Exchange Act of 1934, pursuant to the Exchange Act's requirement that securities firms such as Scottsdale must be members of a national securities association in order to engage in a securities business. FINRA member firms such as Scottsdale are subject to regulatory oversight by FINRA in the exercise of FINRA's quasi-governmental authority under the federal securities laws, and FINRA's activities are subject to review and oversight by the United States Securities and Exchange Commission (SEC). The fact that FINRA member firms have membership agreements and that FINRA is a Delaware corporation with corporate By-Laws does not convert disagreements by regulated member firms regarding their regulation into private "contract" disputes; all of the issues raised by Scottsdale involve regulatory matters, not contract claims.

Contrary to Scottsdale's statement that "this case has little to do with FINRA's exercise of its regulatory authority" (Opp., p. 5), this case has *everything* to do with FINRA's exercise of its regulatory authority. Scottsdale's Complaint--in which it is seeking damages against FINRA for its regulatory actions--boils down to Scottsdale's disagreements with FINRA's SEC-approved governance structure and how FINRA is regulating Scottsdale. As such, the Exchange Act requires

Scottsdale's claims to be made before the SEC, and bars Scottsdale from filing a "breach of contract" lawsuit against FINRA in federal district court.

## II.     FINRA'S BY-LAWS AND RULES ARE REGULATORY, NOT CONTRACTUAL

The cases cited by Scottsdale in support of its argument that there is a "contract" between the parties that can provide the basis for a claim of breach do not support that proposition and are factually inapposite. *See, e.g.*, *Boilermakers Local 154 Retirement Fund v. Chevron Corp.*, 73 A.3d 934 (Del. Ch. 2013) (enforcing Chevron bylaw requiring litigation relating to Chevron's internal affairs be conducted in Delaware); *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) (holding in action by trustee of pension plan against coal producer to enforce reporting and contribution provisions of pension plan, coal producer defendant was entitled to adjudication of its defense that the provisions at issue violated the Sherman Act); *Gary Jet Ctr. v. Gary/Chicago Int'l Airport Auth.*, No. 2:13-cv-453, 2014 U.S. Dist. LEXIS 45201 (N.D. Ind. Apr. 2, 2014) (considering whether federal district court had jurisdiction to determine if airport authority was in breach of a lease with fixed-based operator claiming differential treatment).

FINRA's activities regarding its members, such as how it interprets and enforces its Rules and the Exchange Act, do not provide a basis for breach of contract claims. In the context of cases finding there is no private right of action by member firms against FINRA discussed in section IV, *infra*, the breach of contract argument has been previously raised and rejected. Likewise, FINRA's governance structure, set forth in its By-Laws as reviewed and approved by the SEC, is not a private contract as between FINRA and its members, and cannot be challenged by member firms in federal district court.  *See*, *Standard Investment Chartered v. Nat'l Ass'n of Secs. Dealers, Inc.*, 2007 U.S. Dist. LEXIS 32566 (S.D.N.Y. May 2, 2007); *appeal dismissed as moot*, 560 F.3d 118 (2d Cir. 2009).

## III. THE EXCHANGE ACT'S EXCLUSIVE REVIEW PROCESS DIVESTS DISTRICT COURTS OF SUBJECT MATTER JURISDICTION

Scottsdale's first response to the litany of cases holding that federal district courts lack subject matter jurisdiction over challenges by FINRA member firms to FINRA's (and other SROs') governance and regulatory actions is to argue that FINRA has not disputed that diversity of citizenship exists between Scottsdale and FINRA. Opp., pp. 5-6.

According to Scottsdale, because there is complete diversity and Scottsdale has alleged damages in excess of $75,000, "there is complete diversity, and jurisdiction exists." Opp., p. 6. But diversity jurisdiction is irrelevant when Congress has enacted a comprehensive review process like that in the Exchange Act that acts to divest federal district courts of subject matter jurisdiction. Indeed, diversity jurisdiction existed in many of the cases cited by FINRA in which the court dismissed for lack of subject matter jurisdiction, including, as Scottsdale well knows, the *Scottsdale I* case. *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regulatory Auth., Inc.*, 844 F.3d 414 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 1838 (2017). *See also*, *North v. Smarsh*, 170 F. Supp. 3d 63, 79 (D.D.C. 2015).

Scottsdale then argues that the Supreme Court's decision in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), is inapplicable because the instant case has been pled as a breach of contract claim. Opp., pp. 6-7. According to Scottsdale, for that simple reason, this case is not subject to jurisdictional divestment under the *Thunder Basin* doctrine. But there is absolutely no authority for Scottsdale's assertion, and application of the doctrine does not depend upon the words a plaintiff chooses to describe the cause of action in its complaint.

Next, citing *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010), Scottsdale argues that this case falls into an exception subsequently recognized by the Supreme Court allowing certain limited types of claims to be pursued in district court if the claims

are "outside the [SEC's] competence and expertise," and they are not "of the type Congress intended to be reviewed within th[e] statutory structure." 561 U.S. at 490.

The claims presented in *Free Enterprise,* however, were fundamentally different from Scottsdale's claims, and those differences make the limited exception recognized in *Free Enterprise* inapplicable to this case. First, the challenge in *Free Enterprise* was to the very existence of the PCAOB, not to any specific PCAOB rules. 561 U.S. at 490. Second, unlike Scottsdale, the petitioners in *Free Enterprise* were not already the subject of a pending disciplinary sanction subject to appeal through the Exchange Act's administrative review process. *Id*.; s*ee* Exh. A to FINRA Motion. Third, again unlike the issues raised by Scottsdale, the Court found the issues raised by the constitutional challenge to the PCAOB's existence to be wholly outside of the SEC's expertise, with no "technical considerations of agency policy." *Id*. at 491.

It is obvious that every matter presented as an element of Scottsdale's "contract" claim relates to regulatory matters that fall squarely within the SEC's expertise and competence and either have already been considered by the SEC or have been presented by Scottsdale in other proceedings for the SEC's review and decision. As described in FINRA's opening brief, the SEC has already reviewed and approved the composition of FINRA's Board of Governors challenged in Scottsdale's Complaint. Complaint, para. 33-36. The other issue served up by Scottsdale here as a contract claim, whether FINRA has engaged in "ultra vires" regulatory actions, is the subject of a pending SEC appeal by Scottsdale of a FINRA disciplinary proceeding. Complaint, para. 52-61; Application for Review, Exh. A to FINRA Motion, p. 9 at n. 29 ("This point has been addressed in prior briefing … and will be addressed in the appellate briefs in this matter."). And finally, the issue of whether FINRA is inappropriately using guidance to burden competition in the penny stock marketplace also falls squarely within the SEC's oversight responsibility. Complaint para.

37-51. Scottsdale knows this to be the case, as evidenced by its sister firm's filing of a Petition for Rulemaking with the SEC raising that issue as well as other matters in its Complaint at the same time this lawsuit was filed. Exh. B to FINRA Motion, Petition for Rulemaking at pp. 9-12 and 13 (*e.g.,* "FINRA Rules Should Prohibit the Improper Issuance and Use of 'Guidance'").

The Exchange Act contains detailed provisions regarding the structure, governance, and regulatory activities of a national securities association, and provides for extensive oversight by the SEC, as set forth in FINRA's opening brief. Every court to have considered the question has recognized the requirement that Congress intended for the SEC to use its special expertise as the primary government agency enforcing the federal securities laws to review and approve all proposed changes to FINRA's By-Laws and Rules and to oversee all of FINRA's regulatory activities in the first instance. "The self-regulatory organizations exercise authority subject to SEC oversight. They have no authority to regulate independently of the SEC's control." *NASD v. SEC*, 431 F.3d 803, 807 (D.C. Cir. 2010), *quoting*, S. REP. NO. 94-75, at 23 (1975), *as reprinted in* U.S.C.C.A.N. 179, 201. To permit parties to bypass this regulatory scheme simply by calling their challenges breach of contract claims would be directly contrary to the process established in the Exchange Act, would effectively take the SEC out of the process, and as a practical matter, would make most of FINRA's regulatory activities subject to federal district court litigation that could be brought by any of its thousands of regulated firms. Plaintiff's Complaint should be dismissed.

**IV.    SCOTTSDALE HAS NO PRIVATE RIGHT OF ACTION AND FINRA HAS IMMUNITY FROM SCOTTSDALE'S CLAIMS FOR DAMAGES**

Scottsdale's opposition to FINRA's no private right of action defense is based upon the same erroneous assertion that FINRA's By-Laws and the member firm agreement constitute a "contract" with Scottsdale "separate and apart from any provision of the Exchange Act." Opp., p. 11. But the only reason FINRA's By-Laws and membership agreements are in place is to allow

FINRA to exercise its delegated regulatory authority under the Exchange Act. There certainly is nothing in the Complaint or Scottsdale's "contract" claim that is "separate and apart from the Exchange Act." To the contrary, every single matter made the subject of Scottsdale's Complaint refers to or purports to be based on the Exchange Act.

The Exchange Act does not include a private right of action for securities firms like Scottsdale to challenge FINRA's regulatory activities by filing suit in district court. Likewise, Scottsdale's quest to change FINRA's regulation of the penny-stock market goes to the heart of FINRA's regulatory function, regardless of the words Scottsdale chooses to describe the process. The court in *MM&S Financial, Inc. v. NASD*, 364 F.3d 908, 912 (8th Cir. 2004), rejected a similar argument made by another member firm to characterize its claims as a "breach of contract:"

> Any attempt by MM&S to bypass the Exchange Act by asserting a private breach of contract claim for violations of section 78s(g)(1) is fruitless. *See, e.g., Lowe v. NASD Regulation, Inc.,* No. 99-1751, 1999 WL 1680653, at *4 (D.D.C. Dec. 14, 1999) (holding breach of contract allegations "that the NASD violated its own rules... invok[ed] statutory federal jurisdiction under 15 U.S.C. § 78aa"); *Niss,* 989 F.Supp. at 1308 (holding plaintiff's breach of contract claim against NASD failed, because it was simply "an attempt to evade the doctrine that no private right of action exists against the NASD for failing to supervise its members adequately").

Scottsdale attempts to distinguish this and other cases cited by FINRA, again by characterizing them as "regulatory," and its own claims as "contractual." But the Complaint addresses activities that go to the heart of FINRA's regulatory functions, and Scottsdale does not have a private right of action to challenge them in this Court.[1]

---

[1] FINRA's By-Laws contain provisions governing their amendment—provisions that Scottsdale chooses to ignore in its insistence that litigation is its only option. *See*, FINRA By-Laws, Art. XVI, Sec. 1, *Procedure for Adopting Amendments to By-Laws.*

Scottsdale's opposition to FINRA's immunity defense is similarly flawed. Scottsdale cites cases for the unremarkable proposition—not applicable here—that SRO immunity covers an SRO's regulatory functions, but not private business activities unrelated to its regulatory functions. *See, e.g., City of Providence v. Bats Global Markets*, 878 F.3d 36 (2d Cir. 2017); *Weissman v. Nat'l Ass'n of Secs. Dealers, Inc.*, 500 F.3d 1293 (11th Circuit 2007); *Sparta Surgical Corp. v. Nat'l Ass'n of Secs. Dealers, Inc.,* 159 F.3d 1209 (9th Cir. 1998). According to Scottsdale, entering into contracts is an activity engaged in by private parties "all the time, and it bears little resemblance to any of the authority delegated to FINRA under the Exchange Act." Opp., p. 12.

This argument collapses upon even a cursory consideration of its underpinnings. Scottsdale's claim is not that FINRA has failed to pay for office supplies under a commercial contract—all of the matters being challenged are regulatory activities, conducted pursuant to the Exchange Act, and subject to review and regulation by the SEC. Scottsdale conflates hypothetical non-immune commercial activity with regulatory activity that Scottsdale disapproves of. But the law does not, and Scottsdale's claims against FINRA are barred by the doctrine of immunity.

**V.     CONCLUSION**

For the foregoing reasons, FINRA moves the Court to grant its Motion to Dismiss, and for such other and further relief to which it may be entitled.

By:        /s/ Terri L. Reicher
            Terri L. Reicher

            Timothy W. Mountz (D.C. Bar No. 1028867)
            Terri L. Reicher (D.C. Bar No. 414685)
            FINRA Office of General Counsel
            1735 K Street, N.W.
            Washington, D.C. 20006
            Phone: (202) 728-8210
            Phone: (202) 728-8967
            Fax: (202) 728-8294
            Email: Timothy.Mountz@finra.org
            Email: Terri.Reicher@finra.org

*Attorneys for Defendant*,
**FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of March, 2019, I filed the foregoing Reply Brief with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record for all parties.

DATED:   March 4, 2019

By:   /s/ Terri L. Reicher
Terri L. Reicher

Terri L. Reicher (D.C. Bar No. 414685)
FINRA Office of General Counsel
1735 K Street, N.W.
Washington, D.C. 20006
Phone: (202) 728-8967
Fax: (202) 728-8294
Email: Terri.Reicher@finra.org